## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  HONORABLE DONALD C. POGUE, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
|  | x |  |
| JIANGSU JIASHENG PHOTOVOLTAIC TECHNOLOGY CO., LTD., | : | |
|  | : | |
|  | : | |
| Plaintiff, | : | Court No. 13-00012 |
|  | : | |
| v. | : | |
|  | : | |
| UNITED STATES, | : | |
|  | : | |
| Defendant. | : | |

_____x

### <u>ORDER</u>

Upon reading and filing Plaintiff's Motion for Judgment on the Agency Record pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, and upon consideration of all other papers and proceedings herein, it is hereby

**ORDERED** that Respondent's motion is GRANTED; and it is further

**ORDERED** that the U.S. Department of Commerce's ("Commerce") determination in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, 77 Fed. Reg. 63,791 (October 17, 2012) ("Final Determination"), as amended in the resulting antidumping duty Order published as *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dec. 7, 2012) ("Antidumping Duty Order"), is remanded to Commerce with instructions to recalculate the antidumping duty rate for

Plaintiff based on the weighted-average dumping margin assigned to the other Section A

separate rate companies in the Final Determination, which was derived from the individual

dumping rates found for Wuxi Suntech Power Co., Ltd. ("Suntech") and Changzhou Trina Solar

Energy Co., Ltd. ("Trina"), the two mandatory respondents in connection with Commerce's

Final Determination and Antidumping Duty Order; and it is further

      **ORDERED** that Commerce shall file with the Court and provide to the parties a revised

final determination within 60 days of the date of this order; thereafter, the parties shall have 30

days to submit briefs addressing the revised final determination to the Court and the parties shall

have 15 days thereafter to file reply briefs with the Court.

_____

DONALD C. POGUE, CHIEF JUDGE

DATED: _____
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  HONORABLE DONALD C. POGUE, CHIEF JUDGE

_____
|                                              | x |
| JIANGSU JIASHENG PHOTOVOLTAIC                | : |
| TECHNOLOGY CO., LTD.,                        | : |
|                                              | : |
|                    Plaintiff,                | :     Court No. 13-00012 |
|                                              | : |
|           v.                                 | : |
|                                              | : |
| UNITED STATES,                               | : |
|                                              | : |
|                    Defendant.                | : |
_____x

### PLAINTIFF'S MOTION FOR JUDGMENT ON THE
### AGENCY RECORD PURSUANT TO RULE 56.2

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

Plaintiff, Jiangsu Jiasheng Photovoltaic Technology, Co., Ltd., respectfully moves for judgment

on the agency record.  Plaintiff challenges certain aspects of the Department of Commerce's

("Commerce") final determination in the antidumping duty investigation of *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of*

*China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final*

*Determination of Critical Circumstances, in Part*, 77 Fed. Reg. 63,791 (Oct. 17, 2012) ("Final

Determination"), as amended in the resulting antidumping duty Order published as *Crystalline*

*Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic*

*of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping*

*Duty Order*, 77 Fed. Reg. 73,018 (Dec. 7, 2012) ("Antidumping Duty Order").  Plaintiff requests

that the Court remand this matter to Commerce with instructions to recalculate the antidumping

duty rate for Plaintiff based on the weighted-average dumping margin assigned to the other

Section A separate rate companies in the Final Determination, which was derived from the

individual dumping rates found for Wuxi Suntech Power Co., Ltd. ("Suntech") and Changzhou

Trina Solar Energy Co., Ltd. ("Trina"), the two mandatory respondents in connection with

Commerce's Final Determination and Antidumping Duty Order.

     The legal arguments in support of this motion are detailed in the attached Memorandum

of Law in Support of Plaintiff's Motion for Judgment on the Agency Record.

Respectfully submitted,

_/s/ Francis J. Sailer_
Francis J. Sailer
Mark E. Pardo
Andrew T. Schutz
Brandon M. Petelin

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
120 New York Ave., NW, Suite 650
Washington, DC 20005

*Counsel to Jiangsu Jiasheng Photovoltaic Technology, Co., Ltd.*

Dated: August 29, 2013

## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  HONORABLE DONALD C. POGUE, CHIEF JUDGE

———————————————————————— x
JIANGSU JIASHENG PHOTOVOLTAIC : 
TECHNOLOGY CO., LTD., : 
  : 
              Plaintiff, :      Court No. 13-00012
  : 
      v. : 
  : 
UNITED STATES, : 
  : 
            Defendant. : 
————————————————————————x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR JUDGMENT ON THE
## AGENCY RECORD PURSUANT TO RULE 56.2

Francis J. Sailer
Mark E. Pardo
Andrew T. Schutz
Brandon M. Petelin

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

1201 New York Avenue, NW
Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel to Jiangsu Jiasheng Photovoltaic
Technology, Co., Ltd.*

August 29, 2013

## TABLE OF CONTENTS

PLAINTIFF'S STATEMENT PURSUANT TO RULE 56.2.........................................................1

A.   Determination Subject to Review ...........................................................................1

B.   Statement of Issues Presented..................................................................................1

SUMMARY OF ARGUMENTS............................................................................................2

STANDARD OF REVIEW ....................................................................................................3

STATEMENT OF FACTS.......................................................................................................5

ARGUMENT ...........................................................................................................................8

I.   THE DEPARTMENT'S DECISION TO REJECT JIASHENG'S QUANTITY AND
     VALUE RESPONSE AND TIMELY SUBMITTED SEPARATE RATE
     APPLICATION AND THEN TO ASSIGN JIASHENG THE ADVERSE CHINA-
     WIDE RATE WAS UNSUPPORTED BY THE FACTS, CONTRARY TO LAW,
     AND UNREASONABLE .................................................................................... 8

A.   The Department Was Obligated to Accept Jiasheng's Q&V Response and Separate Rate
     Application Because Doing So Imposed No Additional Burden on the Department and
     Rejecting Those Submissions Was Contrary to the Interests of Accuracy and Fairness......9

     1.   The Department's Rejection of Jiasheng's Q&V Response Was Contrary to Law and
          Unreasonable ...............................................................................................................11

     2.   The Department's Rejection of Jiasheng's Separate Rate Application was Contrary to
          Law and Unreasonable..................................................................................................14

B.   The Department Was Statutorily Obligated to Contact Jiasheng Regarding Its Initially
     Improper Q&V Filing............................................................................................................16

C.   The Department Should Not Have Denied Jiasheng Separate Rate Status in the Final
     Determination .......................................................................................................................23

CONCLUSION.........................................................................................................................24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Chaparral Steel Co. v. United States*,
    901 F.2d 1097 (Fed. Cir. 1990)................................................................ *passim*

*China Kingdom Imp. & Exp. Co. v. United States*,
    31 CIT 1329 (2007) ........................................................................18, 22, 24

*Citic Trading Co., Ltd. v. United States*,
    27 CIT 356 (2003) ....................................................................................18

*Consolidated Edison Corp. v.  Labor Board*,
    305 U.S. 197 (1938)..................................................................................3

*Crawfish Processors Alliance v. United States*,
    477 F.3d 1375 (Fed. Cir. 2007)................................................................4

*Fischer S.A. Comercio, Industria and Agricultura v. United States*,
    700 F.Supp. 2d 1364 (2010) ...............................................................9-10

*Foshan Shunde Yongjian Housewares & Hardware Co., Ltd. v. United States*,
    35 CIT ___, 2011 Ct. Intl. Trade LEXIS 123 (Ct. Int'l Trade Oct. 12, 2011).........................17

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
    815 F. Supp. 2d 1342 (CIT 2012) ................................................... *passim*

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*,
    366 F. Supp. 2d 1264 (CIT 2005).......................................................18, 24

*Helmerich & Payne v. United States*,
    22 CIT 928 (1998) ................................................................... *passim*

*Home Meridian International, Inc. v United States*,
    Slip Op. 13-81, 2013 Ct. Intl. Trade LEXIS 83 (Ct. Int'l Trade June 25, 2013).....................5

*National Knitwear & Sportswear Ass'n v. United States*,
    15 C.I.T. 548 (1991) ............................................................................4, 23

*Mannesmannrohren-Werke AG & Mannesmann Pipe & Steel Corp. v. United States*,
    23 CIT 826 (1999) ..................................................................................17

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995)..................................................................9

*PSC VSMPO - AVISMA Corp. v. United States,*
  2009 Ct. Intl. Trade LEXIS 127 (Ct. Int'l Trade Oct. 20, 2009)...............................................4, 9

*Rhone Poulenc, Inc. v. United States,*
  899 F.2d 1185 (Fed. Cir. 1990).............................................................................................................10

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States,*
  268 F.3d 1376 (Fed. Cir. 2001)..............................................................................................................5

*Shandong Huarong Mach. Co. v. United States,*
  435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006) .....................................................................................16

*SNR Roulements v. United States,*
  402 F.3d 1358 (Fed. Cir. 2005)...........................................................................................................4-5

*Thai Pineapple Canning Indus. Corp. v. United States,*
  273 F.3d 1077 (Fed. Cir. 2001)...........................................................................................................4-5

*Timken U.S. Corp. v. United States,*
  434 F.3d 1345 (Fed. Cir.2006)........................................................................................................10-11

*Universal Camera Corp. v. NLRB,*
  340 U.S. 474 (1951)....................................................................................................................................3

*Usinor Sacilor v. United States,*
  18 CIT 1155 (1994) .................................................................................................................................10

*World Finer Foods v. United States,*
  24 CIT 541 (2000) ..................................................................................................................................22

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
  2013 U.S. App. LEXIS 10008 (Fed. Cir. 2013) ..................................................................................5

*Yantai Timken Co. v. United States,*
  31 CIT 1741 (2007) ...................................................................................................................................9

## <u>Statutes & Regulations</u>

19 U.S.C. § 1516a(b)(1)(B) ........................................................................................................................3

19 U.S.C. § 1677e(a)...............................................................................................................................2, 16

19 U.S.C. § 1677e(b) ..............................................................................................................................2, 16

19 U.S.C. § 1677m(c)(2)........................................................................................................................22, 24

19 U.S.C. § 1677m(d)...................................................................................................................17-18, 24

19 U.S.C. § 1677(9)(A)................................................................................................15

**Administrative Decisions**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the*
   *People's Republic of China: Initiation of Antidumping Duty Investigation*, 76 Fed. Reg.
   70,960 (Nov. 16, 2011).........................................................................................5, 22

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the*
   *People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value,*
   *Postponement of Final Determination and Affirmative Preliminary Determination of Critical*
   *Circumstances*, 77 Fed. Reg. 31,309 (May 25, 2012) ............................................................7

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the*
   *People's Republic of China: Final Determination of Sales at Less Than Fair Value, and*
   *Affirmative Final Determination of Critical Circumstances, in Part*, 77 Fed. Reg. 63,791
   (October 17, 2012)......................................................................................... *passim*

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*
   *People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value,*
   *and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (December 7, 2012).......................*passim*

*Circular Welded Austenitic Stainless Pressure Pipe From the People's Republic of China:*
   *Initiation of Antidumping Duty Investigation,* 73 FR 10221 (February 26, 2008) .................21

*Initiation of Antidumping Duty Investigation: Certain Artist Canvas From the People's Republic*
   *of China*, 70 FR 21996 (April 28, 2005)...............................................................22

**Others**

H.R. Rep. No. 98-725 (1984).....................................................................................4, 9

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

This memorandum of law is filed on behalf of Jiangsu Jiasheng Photovoltaic Technology

Co., Ltd. ("Jiasheng" or "Plaintiff").

**PLAINTIFF'S STATEMENT PURSUANT TO RULE 56.2**

**A.      Determination Subject to Review**

Plaintiff seeks judicial review of the U.S. Department of Commerce's (the "Department")

final determination in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into*

*Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair*

*Value, and Affirmative Final Determination of Critical Circumstances, in Part*, 77 Fed. Reg.

63,791 (October 17, 2012) ("Final Determination"), as amended in *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of*

*China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty*

*Order*, 77 Fed. Reg. 73,018 (December 7, 2012) ("Antidumping Duty Order").  The Final

Determination was accompanied by Commerce's "Issues and Decision Memorandum for the

Final Determination in the Antidumping Duty Investigation of Crystalline Silicon Photovoltaic

Cells, Whether or Not Assembled into Modules, from the People's Republic of China" (October

9, 2012) ("I&D Memo") **Doc 1**.[1]

**B.      Statement of Issues Presented**

1.      Whether the Department's decision to assign Jiasheng the PRC-wide rate of

249.96 percent solely on the basis of failing to file a timely quantity and value ("Q&V")

---

[1] Jiasheng will submit its Document Appendix to this Court within one week of filing this Brief.  In this Brief, Administrative Record citations refer to the document number in Jiasheng's Document Appendix (e.g., I&D Memo is referred to as "Doc 1").  The Table of Contents of the Document Appendix references the document's title, date, and whether the document contains Business Proprietary Information ("BPI") or is Public.

response is contrary to the statute and unsupported by substantial evidence where the Department improperly rejected each of Jiasheng's multiple attempts to file a Q&V response?

2.      Whether the Department's failure to notify Jiasheng that its initial Q&V response was untimely and deficient, without allowing Jiasheng an opportunity to correct its filing, was contrary to law?

3.      Whether the Department's failure to provide Jiasheng with an extension of time to resubmit its Q&V response, despite doing so for other respondents, was contrary to law and unreasonable?

4.      Whether the Department's decision to reject Jiasheng's separate rate application on the basis that Jiasheng had failed to timely file a Q&V response was contrary to law and unsupported by substantial evidence?

## SUMMARY OF ARGUMENTS

In its Final Determination, by continuing to find that Jiasheng did not qualify for a separate rate, the Department assigned Jiasheng the adverse China-wide rate of 249.96 percent under the authority of 19 U.S.C. § 1677e(a) and (b) for Jiasheng's failure to submit a timely Q&V response.  As discussed below, contrary to law, the Department improperly rejected each of Jiasheng's multiple attempts to file a Q&V response throughout the Department's investigation.  First, despite a statutory obligation to do so, the Department failed to notify Jiasheng that the company's November 29, 2011, Q&V response was untimely and deficient, and to allow Jiasheng an opportunity to correct its filing.  Second, the Department's failure to provide Jiasheng with an extension of time to resubmit its Q&V response, despite doing so for other respondents, was contrary to law and unreasonable.

Moreover, the Department's decision to deny Jiasheng a separate rate due to a late-filed

Q&V response, and despite Jiasheng filing a complete and timely separate rate application

("SRA"), was unsupported by substantial evidence, unreasonable, and otherwise contrary to law.

Accepting Jiasheng's Q&V response and separate rate application placed absolutely no burden

on the Department; however, these rejections resulted in the Department punitively assigning to

Jiasheng the PRC-wide rate of 249.96 percent in the Final Determination.  Despite Jiasheng's

continued good faith efforts to cooperate to the best of its ability throughout the Department's

investigation, the Department unjustifiably denied Jiasheng a separate rate in the Final

Determination.

The Department should have assigned Jiasheng a separate rate based on the weighted-

average dumping margin assigned to the other separate rate companies in the Final

Determination, which was derived from the individual dumping rates found for Wuxi Suntech

Power Co., Ltd. ("Suntech") and Changzhou Trina Solar Energy Co., Ltd. ("Trina"), the two

mandatory respondents in Commerce's investigation.

## STANDARD OF REVIEW

This Court will consider whether the Department's Final Determination was

"unsupported by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1)(B) (1988).  "{S}ubstantial evidence is more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting*

*Consolidated Edison Corp.v. Labor Board*, 305 U.S. 197, 229 (1938).  "{S}tatutory

interpretations articulated by Commerce in antidumping determinations qualify for *Chevron*

deference;" however, "if the Government's position is unreasonable, deference does the agency

3

no good." *Thai Pineapple Canning Indus. Corp. v. United States*, 273 F.3d 1077, 1083 (Fed. Cir. 2001). "While various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case when a more accurate methodology is available and has been used in similar cases." *Id.* at 1085. "Commerce's application of its standard methodology" to a particular case will be rejected if that methodology does not "fall … within the range of permissible construction{s} of the statute." *Id.* The Department cannot artificially restrict the evidence necessary to establish a particular fact in a manner contrary to normal rules of statutory construction. *Crawfish Processors Alliance v. United States*, 477 F.3d 1375, 1384 (Fed. Cir. 2007).

The antidumping laws are intended to be remedial rather than punitive. *See, e.g.*, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990); *see also National Knitwear & Sportswear Ass'n v. United States*, 15 C.I.T. 548, 558 (1991). The Department has a clear obligation to administer the antidumping laws fairly. *See, e.g.*, *PSC VSMPO - AVISMA Corp. v. United States,* 2009 Ct. Intl. Trade LEXIS 127 (Ct. Int'l Trade Oct. 20, 2009) and cases and documents cited therein, including *Helmerich & Payne v. United States*, 22 CIT 928, 938, 24 F. Supp. 2d 304, 313 (1998) ("[F]air and accurate determinations are fundamental to the proper administration of our dumping laws.") and H.R. Rep. No. 98-725, at 43 (1984) ("The Committee … believes it essential [for] the proper enforcement of the laws that information used in determining … the actual amount of any … antidumping duty to be assessed under outstanding orders [be] accurate to the extent possible").

"Antidumping laws intend to calculate antidumping duties on a fair and equitable basis." *SNR Roulements v. United States*, 402 F.3d 1358, 1363 (Fed. Cir. 2005). "An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as

4

accurately as possible." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 2013 U.S. App.

LEXIS 10008, at *21 (Fed. Cir. 2013) ("Bestpak").   A claim by the Department that its decision

was required because it had "limited resources or statutory time constraints" cannot "override

fairness and accuracy." *Id.* Commerce "must … calculate dumping margins as accurately as

possible and in line with the producer's actual experience, employing the best information on the

record." *Home Meridian International, Inc. v United States*, Slip Op. 13-81, 2013 Ct. Intl. Trade

LEXIS 83, at *19 (Ct. Int'l Trade June 25, 2013); *Shakeproof Assembly Components Div. of Ill.

Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001).   "To avoid distortions, the

Department must consider all relevant factors, including those not present in most antidumping

determinations."  *Thai Pineapple Canning Indus. Corp.,* 273 F.3d at 1085.

## STATEMENT OF FACTS

On October 9, 2011, the U.S. solar panel industry filed a petition with the U.S.

Department of Commerce and the U.S. International Trade Commission claiming that the

Chinese solar panel industry was making sales to the United States at less than fair value.  On

November 16, 2011, based on the allegations in the petition, the Department initiated an

antidumping duty investigation of solar panels from China.  *See Crystalline Silicon Photovoltaic

Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Initiation

of Antidumping Duty Investigation*, 76 Fed. Reg. 70,960 (Nov. 16, 2011) ("Initiation Notice").

In its Initiation Notice, the Department indicated that it had issued quantity and value

("Q&V") questionnaires to the 75 Chinese solar cells producers and/or exporters identified in the

petition for use in the Department's respondent selection analysis.  The deadline for responses to

the questionnaire was listed as November 29, 2011.  The Department also made the Q&V

questionnaire publicly accessible on its website.  Despite being identified in the petition as one of

the 75 producer/exporters of solar cells, Jiasheng did not receive a Q&V questionnaire and did not became aware of the deadline for submitting Q&V responses until November 29, 2011.

On November 29, 2011, at 9:59 pm, on a *pro se* basis, Jiasheng "filed" a copy of its Q&V questionnaire response by emailing it to the Department "officials in charge" identified on the Q&V questionnaire.  **Doc 2 at Exhibit A**.  On December 8, 2011, the Department selected two mandatory respondents for investigation, Wuxi Suntech Power Co., Ltd. ("Suntech") and Changzhou Trina Solar Energy Co., Ltd. ("Trina").  **Doc 3**.  All other exporters that sought to be excluded from the China-wide entity participated as separate rate respondents.

On December 9, 2011, the Department informed nine Chinese producer/exporters that their Q&V responses were improperly filed.  The Department expressly asserted to these companies that, as a result of the improper filing, "we have not accepted your response and *will not rely upon it in our investigation*.  We are rejecting your response and *deleting it from the record*, with the exception of one copy which will be kept for the official record, solely for the purposes of establishing and documenting the basis for rejecting the document, as required by" the regulations.  **Docs 4-12.**  The Department went on to provide these nine companies until December 14, 2011 to re-file their Q&V responses.  *Id.*  Jiasheng was not notified that its Q&V response was deficient.  On December 12, 2011, Jiasheng re-filed its Q&V response using the Department's IA ACCESS electronic filing procedure two days before the Department's newly-established Q&V deadline for the other nine companies whose Q&V responses were improperly filed.  Nearly four weeks after Jiasheng refiled its Q&V response, the Department issued a letter (dated January 6, 2012) notifying Jiasheng that the company's December 12, 2011, Q&V filing was being rejected as untimely.  **Doc 13**.  The Department did not address Jiasheng's initial Q&V submission of November 29, 2011.

On January 17, 2012, Jiasheng submitted a timely and complete separate rate application to the Department to demonstrate the company's freedom from *de jure* and *de facto* government control.  Nearly four weeks later, on February 10, 2012, the Department rejected Jiasheng's timely filed separate rate application on the basis that the company did not file a timely Q&V response.  **Doc 14**.

On May 25, 2012, the Department published its Preliminary Determination, finding that the mandatory respondents made sales at less than fair value during the period of investigation. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Affirmative Preliminary Determination of Critical Circumstances*, 77 Fed. Reg. 31,309 (May 25, 2012) ("Preliminary Determination"). The mandatory respondents were assigned margins of 31.14 percent and 31.22 percent.  The Department preliminarily determined that Jiasheng did not qualify for a separate rate as the company failed to submit a timely Q&V response.   Jiasheng was, therefore, considered part of the PRC-wide entity and assigned the punitive, China-wide rate of 249.46%.

On July 30, 2012, Jiasheng timely submitted a case brief arguing that the Department's decision to deny Jiasheng a separate rate due to a late filed Q&V response, and despite a timely filed separate rate application, was unreasonable and contrary to law.  On October 17, 2012, the Department published its final determination, continuing to find that Jiasheng did not qualify for a separate rate.  The Department continued to consider Jiasheng part of the PRC-wide entity and confirmed its application of the punitive, China-wide rate of 249.96 percent to Jiasheng.  *See* Final Determination; *see also* I&D Memo at Comment 45.  **Doc 1**.  On December 7, 2012, in the Antidumping Duty Order, the Department assigned to the other qualifying Section A separate

rate respondents a dumping margin of 24.48 percent, based on Trina's margin of 18.38 percent

and Suntech's margin of 29.14 percent.

## ARGUMENT

I.   **THE DEPARTMENT'S DECISION TO REJECT JIASHENG'S QUANTITY AND
VALUE RESPONSE AND TIMELY SUBMITTED SEPARATE RATE
APPLICATION AND THEN TO ASSIGN JIASHENG THE ADVERSE CHINA-
WIDE RATE WAS UNSUPPORTED BY THE FACTS, CONTRARY TO LAW,
AND UNREASONABLE**

The Department improperly rejected Jiasheng's Q&V response and then, unjustifiably,

used that rejection as the basis for rejecting Jiasheng's timely filed separate rate application

("SRA").  As a result, in its Final Determination, the Department denied Jiasheng separate rate

status and assigned Jiasheng the punitive China-wide rate of 249.96 percent, nearly 10 times the

separate rate assigned to other cooperative non-mandatory respondents.  The Department relied

on the following reasoning in denying Jiasheng separate rate status in the Final Determination:

> The Department stated in the *Initiation Notice* that it "requires that
> respondents submit a response to both the quantity and value
> questionnaire and the separate rate-application by the respective
> deadlines in order to receive consideration for separate-rate status."
> Additionally, in the Q&V questionnaire sent to Jiasheng the
> Department, stated that it "will not give consideration to any separate-
> rate status application made by parties that fail to timely respond to the
> quantity and value questionnaire . . . ."  Because Jiasheng failed to
> timely file a Q&V questionnaire response the Department did not
> consider its SRA and has continued to treat the company as part of the
> PRC-wide entity.  I&D Memo at Comment 45 (internal citations
> omitted).

**Doc 1 at 105**.  The Department's decision to deny Jiasheng separate rate status and to assign

Jiasheng the punitive China-wide rate of 249.96 percent is not legally justifiable and is

unsupported by the facts of the case.  Moreover, the Department has failed to provide a

reasonable justification for why it denied Jiasheng separate rate status.

**A.     The Department Was Obligated to Accept Jiasheng's Q&V Response and Separate Rate Application Because Doing So Imposed No Additional Burden on the Department and Rejecting Those Submissions Was Contrary to the Interests of Accuracy and Fairness**

The courts have repeatedly confirmed that the antidumping laws are intended to be remedial rather than punitive. *See, e.g.*, *Chaparral Steel Co.*, 901 F.2d 1097, at 1103-04; *see also National Knitwear & Sportswear Ass'n*, 15 C.I.T. 548, at 558. As a result, the Department has a clear obligation to administer the antidumping laws fairly. *See, e.g.*, *PSC VSMPO - AVISMA Corp.,* 2009 Ct. Intl. Trade LEXIS 127 (Ct. Int'l Trade Oct. 20, 2009) and cases and documents cited therein, including *Helmerich & Payne v. United States*, 22 CIT 928, 938, 24 F. Supp. 2d 304, 313 (1998) ("[F]air and accurate determinations are fundamental to the proper administration of our dumping laws.") and H.R. Rep. No. 98-725, at 43 (1984) ("The Committee…believes it essential [for] the proper enforcement of the laws that information used in determining…the actual amount of any … antidumping duty to be assessed under outstanding orders [be] accurate to the extent possible").

More importantly, however, in a recent decision addressing Department behavior far less draconian than that presented in this case, this Court supported its rejection of the Department's refusal to accept a party's late-filed separate rate filing, stating:

> The law applicable to this issue recognizes that Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings. *See NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1206–07 (Fed. Cir. 1995); *see also Yantai Timken Co. v. United States*, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1371 (2007) ("In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, it must be permitted to enforce the time frame provided in its regulations."). However, Commerce's discretion in this regard is not absolute. *NTN Bearings*, 74 F.3d at 1207 ("[A] regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion."); *see also Fischer S.A. Comercio, Industria and*

9

> *Agricultura v. United States*, _ CIT _, 700 F.Supp. 2d 1364, 1375-77 (2010).
>
> When considering whether Commerce's rejection of an untimely filing amounts to an abuse of discretion, the court is guided first by the remedial, and not punitive, purpose of the antidumping statute, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103–04 (Fed. Cir. 1990), and the statute's goal of determining margins "as accurately as possible," *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The court also weighs "the burden imposed upon the agency by accepting the late submission," *Usinor Sacilor v. United States*, 18 CIT 1155, 1164, 872 F. Supp. 2d 1000, 1008 (1994), and "the need for finality at the final results stage," *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir.2006). Thus, while deferring to Commerce's necessary discretion to set and enforce its deadlines, the court will review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality.

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States,* 815 F. Supp. 2d 1342, 1366-67 (CIT 2012). In *Grobest*, this Court considered whether the Department was justified in rejecting a separate rate certification ("SRC") that was filed 95 days after the deadline set by the Department. This Court found that the Department abused its discretion when it rejected the respondent's untimely filed separate rate filing, finding, in part, (1) that there was a "stark contrast" between the Vietnam-wide rate of 25.76% given to the respondent and the 3.92% rate it would have received if the separate rate filing had been accepted, (2) that "every indication suggests that the burden of reviewing the SRC would not be great," and (3) that there was no evidence supporting a conclusion that "the burden on Commerce would be sufficient to outweigh the interests in fairness and accuracy." *Id.* In doing so, the Court put the final emphasis on a case-specific analysis that requires a weighing of "the interests in accuracy and fairness against the burden placed on the Department." *Id.*

1.      **The Department's Rejection of Jiasheng's Q&V Response Was Contrary to Law and Unreasonable**

In this case, the Department faces a situation very similar to but far more egregious than the one presented in *Grobest*.  Whereas in *Grobest* the respondent's separate rate filing was filed 95 days after the deadline established by the Department, Jiasheng provided its Q&V response *pro se* to the "officials in charge" of the investigation via email on the very day it was due, albeit several hours after 5 p.m.  **Doc 2 at Exhibit A**.  Even so, while we recognize that Jiasheng's initial Q&V response was not filed through the Department's IA Access website (http://iaaccess.trade.gov) as requested by the Department in the Q&V questionnaire, the Department at the very least had an obligation to notify Jiasheng of its improperly filed Q&V response, as it did for at least nine other respondents whose Q&V responses were rejected as improperly filed.[2]

Nonetheless, after retaining counsel, Jiasheng subsequently re-filed its Q&V response a mere 13 days after the initial deadline for the filing of Q&V responses (*i.e.*, December 12, 2011).  Thus, Jiasheng's Q&V response was filed a full five months before Department released its Preliminary Determination, and more than 10 months before the Final Determination.  Consequently, the Department clearly should have had no concern with "the need for finality at the final results stage" in this case.  *Timken U.S. Corp.*, 434 F.3d 1345, at 1353-54.  And, as a result, the factors considered by this Court in *Grobest* clearly favor acceptance of Jiasheng's Q&V response in the instant case:  (1) there was no burden placed on the Department in accepting Jiasheng's response and, thus, (2) the interests in fairness and accuracy clearly outweigh the burden of reviewing Jiasheng's Q&V response.

---

[2] *See infra* at Section I.B. for a more detailed discussion of the Department's statutory obligation to contact Jiasheng regarding its improperly filed Q&V response.

First, there is no indication that the burden of reviewing Jiasheng's Q&V response would be "great."  In fact, the Department faced no **additional burden in accepting Jiasheng's Q&V response and, therefore, rejecting the Q&V response was arbitrary.**  The Department's Q&V questionnaire is a standardized form asking for extremely basic information with which the Department has great familiarity.  Above all, Jiasheng's Q&V response, the rejection of which is the sole and entire basis for Jiasheng being assigned the punitive China-wide rate in this case, is a one-page document that merely asks the respondent to provide cumulative sales quantity and value data for a six-month period.  In the instant proceeding alone, the Department reviewed 80 Q&V responses.  **Doc 3 at 1-2**.  Thus, based purely on substance, it is not clear what, if any, burden would have been placed on the Department had it accepted Jiasheng's Q&V response.[3]

Second, there is no indication that accepting Jiasheng's Q&V response would have placed a procedural burden on the Department.  In particular, despite the Department's statutory deadlines in investigations, Jiasheng supplied its Q&V response to the Department *pro se*, albeit through an improper filing mechanism, merely five hours after the 5 p.m. filing deadline.  **Doc 2 at Exhibit A**.  Thus, even assuming the Department began its respondent selection process at 8 a.m. the following business day, the Department could have considered Jiasheng's response as part of its analysis.  Alternatively, as noted, the Department could have notified Jiasheng of its improper filing, which it did not, if the time available to review Jiasheng's Q&V response was a real concern based on the Department's statutory deadlines.  As a result, the timing of the filing of Jiasheng's initial Q&V response placed no procedural burden on the Department; the

---

[3] We note, as discussed more fully below, that the other nine respondents Q&V responses were filed and accepted for the record *after* the Department had made its mandatory respondent selection.  Thus, there was no purpose or need for the Department to look at or review those responses (and Jiasheng's) in any event and of no consequence to any burden on the Department.

Department possessed the information that it needed (pertaining to Jiasheng) to proceed to the next stage of the investigation (*i.e.*, respondent selection).

Moreover, surprisingly, the Department rejected Jiasheng's subsequent December 12, 2011, Q&V response despite the fact that it was made two days in advance of the extended Q&V filing deadline for the nine other respondents whose Q&V questionnaire responses were rejected as improperly filed.  **Doc 13**.  Consequently, the Department necessarily made its respondent selection without the benefit of Jiasheng's Q&V data since it was rejected and deleted from the record and not relied upon in the investigation in precisely the same manner as the other nine companies whose Q&V responses were deleted from the record.  By extending the deadline for these nine other respondents, it was quite obvious that the Department had no immediate need for, or concerns about, the Q&V filings of Jiasheng or the nine other respondents whose initial Q&V responses were improperly filed.  **Docs 4-12**.  That is, there was absolutely *no* burden placed on the Department since the Department had no discernible or discoverable need to review the Q&V responses of any of the nine respondents *or* of Jiasheng's since it made its mandatory respondent selection without those ten Q&V responses on the record.[4]

Finally, and partly for the reasons just described, the interest in fairness and accuracy clearly outweighs the Department's burden of reviewing Jiasheng's Q&V response in this case. There is an undeniably "stark contrast" between the separate rate of 24.48 percent assigned to the separate rate respondents and the punitive 249.96 percent China-wide rate assigned to Jiasheng.

---

[4] Alternatively, if the Department did, in fact, consider the other nine improperly filed Q&V responses in its respondent selection in spite of expressly stating that it was deleting them from the record and not relying on them in its investigation, it also had an obligation to consider Jiasheng's improperly filed Q&V response submitted (albeit via email and several hours past 5 p.m.) on the deadline.  Consequently, the Department either felt it had no need to know the substance of Jiasheng's, or the other nine respondents', Q&V information, or it simply considered the improperly filed Q&V information of the other nine respondents and not that of Jiasheng.  Thus, there is no evidence that the Department faced any additional procedural burden by accepting Jiasheng's Q&V response.  Either way, the Department's decision is legally indefensible.

Clearly, had the Department accepted Jiasheng's Q&V response, Jiasheng would have had the

opportunity to establish that it should be assigned the separate rate of 24.48 percent, instead of

the adverse 249.96 percent China-wide rate.  However, despite Jiasheng's good faith efforts to

comply with the Department's Q&V requests, the Department arbitrarily denied Jiasheng this

opportunity based on a Q&V deadline that the Department itself recognized as insignificant by

allowing nine other respondents to re-submit Q&V responses for the record after its mandatory

respondent selection was completed.  Moreover, in this case, by submitting its simple, one-page

Q&V response *pro se* within hours after the Department's 5 p.m. deadline, albeit improperly,

Jiasheng clearly did not seek to gain, nor did it gain, any advantage over other respondents'

filings of Q&V responses.  Clearly, this is contrary to the Department's obligation to calculate

antidumping margins in a fair and accurate manner.  The Department's decision is arbitrarily

punitive, and is not consistent with the overarching intent of the antidumping laws.  *See, e.g.*,

*Chaparral Steel Co.*, 901 F.2d 1097, at 1103-04.

> **2.    The Department's Rejection of Jiasheng's Separate Rate
> Application was Contrary to Law and Unreasonable**

Despite timely filing its separate rate application, the Department subsequently rejected

Jiasheng's separate rate submission.  **Doc 14**.  For reasons similar to those discussed above, the

factors considered by this Court in *Grobest* clearly favor acceptance of Jiasheng's separate rate

application in the instant case.

First, we note that regardless of whatever need the Department may have had for the

Q&V responses it accepted after the mandatory respondent selections had been made, Jiasheng's

separate rate application was filed on time.  Thus, as a Chinese exporter of merchandise under

consideration, Jiasheng was an interested party to the Department's investigation and, as a result,

Jiasheng had a statutory right to participate to the fullest extent required by the Department's

14

restrictive respondent selection processes.   19 U.S.C. § 1677(9)(A).   However, the Department

acted arbitrarily and capriciously on the simple and wholly irrelevant technicality discussed

above.

Second, there is no indication that the burden of reviewing Jiasheng's SRA would be

"great."   In fact, the Department faced *no* additional burden had it accepted Jiasheng's SRA;

Jiasheng's SRA was timely filed.   Thus, the Department had Jiasheng's SRA for as long as it had

*every* other respondent's SRA.   Yet, while these other respondents received the separate rate,

Jiasheng did not.   Like the standardized Q&V questionnaire, the Department's SRA is a

standardized form requesting extremely basic information with which the Department has great

familiarity (*e.g.*, corporate structure information and price setting procedures).   And the level of

detail and volume of data reported in a SRA is extremely truncated as compared to the mountains

of information sought from mandatory respondents.   Thus, there simply would have been *no*

additional procedural or substantive burden placed on the Department had it accepted Jiasheng's

SRA.   It appears that the Department perceives its statutory obligations to conduct an

antidumping investigation and to administer the laws fairly as a burden.   *See*, *e.g.*, *Helmerich &*

*Payne*, 24 F. Supp. 2d 304, at 313.   This cannot stand, and the Department's decision to reject

Jiasheng's separate rate application is legally unsupportable.   *See Grobest*.

Third, and as discussed above, the interest in fairness and accuracy clearly outweighs the

burden of reviewing Jiasheng's SRA in this case.   Despite Jiasheng's good faith efforts to

respond to the Department's questions, the Department arbitrarily denied Jiasheng the

opportunity to establish its entitlement to a separate rate for no reason other than that the

Department had (unfairly and arbitrarily) rejected Jiasheng's Q&V response.   This is contrary to

the Department's obligation to calculate antidumping margins in a fair and accurate manner.

15

Again, this decision was punitive, which is not the intent of the antidumping laws.  *See, e.g.*, *Chaparral Steel Co.*, 901 F.2d 1097, at 1103-04.

Consequently, in this case, "the interests in accuracy and fairness" outweigh the burden placed on the Department by accepting Jiasheng's Q&V response and separate rate application. *See Grobest*.

### B.   The Department Was Statutorily Obligated to Contact Jiasheng Regarding Its Initially Improper Q&V Filing

In the Final Determination, the Department assigned Jiasheng the adverse China-wide dumping margin of 249.96 percent pursuant to its authority under 19 U.S.C. § 1677e(a) to apply facts otherwise available and pursuant to its authority under 19 U.S.C. § 1677e(b) to apply an adverse inference to the facts otherwise available when a party has failed to cooperate to the best of its ability.[5]  However, based on the facts of this case, the Department had a statutory obligation to contact Jiasheng regarding its first improperly filed Q&V response, filed on November 29, 2011, the deadline for filing Q&V responses.

According to the statutory provisions for application of facts otherwise available, it is well established that the Department cannot apply an adverse inference without first establishing that it has satisfied the statutory requirements to apply facts otherwise available.  *See, e.g.*, *Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1289 (Ct. Int'l Trade 2006) ("Absent a valid decision to use facts otherwise available, Commerce may not use an adverse inference").  19 U.S.C. § 1677e(a) governs the use of facts otherwise available and states as follows:

---

[5] The Department specifically and summarily stated that Jiasheng did not qualify for a separate rate and, thus, it assigned the adverse 249.96% China-wide rate to Jiasheng because, according to the Department, it did not file a timely Q&V response. In doing so, the Department was acting according to its authority to apply facts otherwise available and adverse inferences pursuant to 19 U.S.C. § 1677e(a) and (b).  *See* Final Determination at 63,794-95.

(a) In general
If-
(1) necessary information is not available on the record, or
(2) an interested party or any other person-
(A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
(B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
(C) significantly impedes a proceeding under this subtitle, or
(D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,

the administering authority and the Commission shall, ***subject to section 1677m(d) of this title***, use the facts otherwise available in reaching the applicable determination under this subtitle [emphasis added].

Moreover, pursuant to 19 U.S.C. § 1677m(d),

[i]f the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

Consequently, prior to application of facts otherwise available (which is a prerequisite for application of an adverse inference), the statute *requires* the Department to "promptly inform" the party of the noted deficiency and, where practicable, provide the party with an opportunity to correct the deficiency. *See, e.g.*, *Mannesmannrohren-Werke AG & Mannesmann Pipe & Steel Corp. v. United States*, 23 CIT 826, 838 (1999) ("[B]efore Commerce may use facts available, [section 1677m(d)] requires that Commerce give a party an opportunity to remedy or explain deficiencies in its submission"); *see also, Foshan Shunde Yongjian Housewares & Hardware Co., Ltd. v. United States,* 35 CIT ___, 2011 Ct. Intl. Trade LEXIS 123, *9 (Ct. Int'l Trade Oct. 12, 2011) ("Pursuant to the language of the statute, Commerce's authority to apply facts

otherwise available is circumscribed by § 1677m(d).”); *see also Hebei Metals & Minerals Imp.*

*& Exp. Corp. v. United States*, 366 F. Supp. 2d 1264, 1271 (CIT 2005); *see also Citic Trading*

*Co., Ltd. v. United States*, 27 CIT 356, 370-71 (2003) (“stating that 19 USC § 1677m(d) requires

that Commerce, prior to resorting to facts available, give a party an opportunity to remedy or

explain deficiencies in its submission”).  In this case, Jiasheng improperly filed its Q&V

response; thus, the Department had a statutory obligation to provide Jiasheng the opportunity to

correct the improperly filed Q&V response.

  In addition, the Department cannot circumvent its obligation to inform parties of

deficiencies in their submissions and provide an opportunity to make corrections simply by

establishing an arbitrary and inflexible date for completion of Q&V responses and separate rate

applications.  The obligation to permit parties an opportunity to correct deficiencies is statutory,

and the Department can only be excused from this requirement by citing to <u>specific factual</u>

<u>findings</u> demonstrating why it was not “practicable” under the circumstances to seek corrections

to deficient information:

> Commerce must support **with specific factual findings** the required
> determination of practicability under § 1677m(d).  Remedying any
> deficiency in a questionnaire response typically will require
> submission of new information. A mere finding that the remedy would
> require Commerce to consider new information is not commensurate
> with a finding that allowing the interested party to effect the remedy
> would be impracticable under the circumstances, given the statutory
> time limits. And it is obvious that **Commerce may not avoid**
> **conducting the review in full compliance with the statute simply**
> **because in some instances it may be inconvenient to do so**.

*China Kingdom Imp. & Exp. Co. v. United States*, 31 CIT 1329, 1350 (2007) (emphasis added).

  In this case, the Department made no “specific factual findings” demonstrating why it

was not practicable to request the missing Q&V information from Jiasheng promptly after the

Department’s “officials in charge,” who received Jiasheng’s Q&V response, became aware that

it was improperly filed via email.  It was not impracticable to provide an opportunity for Jiasheng to correct its improperly filed Q&V response.  The Department provided such an opportunity to nine other respondents that improperly filed their Q&V responses.   By letters dated December 9, 2011, the Department informed these nine Chinese producers that it was rejecting their improperly filed Q&V responses, establishing an extended due date of December 14, 2011.  **Docs 4-12**.  However, for some unknown reason, Jiasheng, which had also improperly provided a Q&V response to the Department's "officials in charge" on November 29, 2011, never received such a rejection/extension letter in spite of the Department's statutory obligation to issue such a letter.

While the Department's Q&V questionnaire instructs respondents to file their responses through the IA Access website, it also identifies the "officials in charge," and provides the officials' email addresses, should there be questions concerning the Q&V questionnaire.  **Doc 15**. The Q&V questionnaire cover letter states:  "contact Howard Smith at 202-482-5193 or Howard.Smith@trade.gov or Jeffrey Pedersen at 202-482-2769 or Jeffrey.Pedersen@trade.gov, if you have any questions or comments."  **Doc 15**.  Moreover, the Q&V questionnaire itself identifies the "officials in charge" as Jeffrey Pedersen (Jeffrey.Pedersen@trade.gov) and Drew Jackson (Drew.Jackson@trade.gov), the very individuals to whom Jiasheng emailed its Q&V response.  **Doc 2 at Exhibit A;** *see also* **Doc 15**.  Thus, at the very least, the Department's "officials in charge" should be obligated to respond to potential respondents' emails concerning the Q&V questionnaire, which includes responding to Jiasheng's emailed Q&V response.  By specifically identifying the individuals to contact in connection with the Q&V questionnaire on both the Q&V cover letter and questionnaire itself, the Department cannot justify simply ignoring Jiasheng's November 29, 2011, Q&V response submitted *pro se* via email.

Moreover, because Jiasheng filed its November 29, 2011, Q&V response via email, it should have been clear to the Department that Jiasheng was unfamiliar with the Department's procedures and requirements for successfully filing its Q&V response in the correct format and through the proper channels.  But the Department simply did not respond to Jiasheng concerning this submission.  Still, the Department was given a second opportunity to correct its error when Jiasheng re-submitted and properly filed its Q&V response a full two days in advance (*i.e.*, December 12, 2011) of the extended Q&V filing deadline established for the nine other respondents that were given an opportunity to correct the deficiencies in their Q&V responses. However, the Department compounded its error when it unjustifiably rejected this properly filed Q&V response, simply stating that it was untimely without further explanation and still without mentioning Jiasheng's original improperly filed Q&V response.  **Doc 13**.

In fact, it was not until after learning of the rejection letters issued by Commerce to the other nine respondents that Jiasheng, in an effort to show its commitment to full and active participation in the investigation, retained counsel and prepared and re-filed its Q&V questionnaire response on December 12, 2011.  **Docs 4-12**.  Adding to the confusion of the antidumping laws and the rules for Q&V questionnaire responses for *pro se* respondents like Jiasheng, the Department's own Initiation Notice language stated the following:

> The Department will issue and value questionnaires to each of the 75 producers/exporters of solar cells named in the Petition, and will make its respondent selection decision based on the responses to the questionnaires it receives. Parties that do not receive quantity a quantity and value questionnaire from the Department ***may file a quantity and value questionnaire by the applicable deadline if they wish to be included in the pool of companies from which the Department will select mandatory respondents***.

> The Department requires that the respondents submit a response to both the quantity and value questionnaire and the separate-rate application by the respective deadlines in order to receive

consideration for separate-rate status. On the date of the publication of this initiation notice in the Federal Register, the Department will post the quantity and value questionnaire along with the filing instructions on the Import Administration Web site at http://ia.ita.doc.gov/ia-highlights-and-news.html. A response to the quantity and value questionnaire is due no later than November 29, 2011.\47\

-----------------------------------------------------------------------

\47\ See *Circular Welded Austenitic Stainless Pressure Pipe From the People's Republic of China: Initiation of Antidumping Duty Investigation*, 73 FR 10221, 10225 (February 26, 2008); *Initiation of Antidumping Duty Investigation: Certain Artist Canvas From the People's Republic of China*, 70 FR 21996, 21999 (April 28, 2005).

Initiation Notice at 70,964 (emphasis added).  In the first above-quoted paragraph, by using the non-compulsory language "*may file*," the Department effectively indicates that the filing of a Q&V response is necessary *only* if a company wishes to be considered for selection as a mandatory respondent.  In the very next paragraph, the Department states that a respondent must submit a timely Q&V and separate rate application to receive consideration for separate rate status.  It is readily apparent that using both voluntary and compulsory language in consecutive paragraphs when discussing the Q&V response requirements is confusing, and more so to a *pro se* respondent unfamiliar with the antidumping law like Jiasheng.

Finally, we note that despite mailing the Q&V questionnaires to certain parties, the Department's Q&V questionnaire was not publicly available until November 16, 2011 (*i.e.*, the date the Initiation Notice was published), merely 13 days before a response to the Q&V questionnaire was due.  Initiation Notice at 70964 ("On the date of the publication of this initiation notice in the *Federal Register*, the Department will post the quantity and value questionnaire along with the filing instructions on the Import Administration Web site at *http://ia.ita.doc.gov/ia-highlights-andnews.html*.").  Thus, any party not receiving a questionnaire directly from the Department was acting under very tight deadlines to accurately prepare the sales data requested by the Department.

21

In short, Jiasheng's inexperience, in combination with the confusing language in the

Department's Initiation Notice and the Department's apparently inflexible deadline for filing a

Q&V response in order to qualify for a separate rate is unreasonable in this case, particularly for

a *pro se* respondent acting to the best of its ability to respond to the Department's questions.

Indeed, in dealing with respondents, the courts have stated that the Department has an obligation

to assist parties that are attempting to respond to the Department's information requests.

According to 19 U.S.C. § 1677m(c)(2),

> The administering authority and the Commission shall take into
> account any difficulties experienced by interested parties, *particularly
> small companies*, in supplying information requested by the
> administering authority or the Commission in connection with
> investigations and reviews under this subtitle, and *shall provide to
> such interested parties any assistance that is practicable in supplying
> such information* [emphasis added].

In *World Finer Foods v. United States*, 24 CIT 541, at 543-46 (2000), this Court clarified

the point that when a party is attempting to respond to the Department's requests for information,

the Department has a duty to respond and to assist that party.  In Jiasheng's case, however, the

Department did not satisfy its duty to assist Jiasheng in the submission of its Q&V response by

either requesting Jiasheng to re-file its submission or by accepting the Q&V response filed on

December 12, 2011.  Instead, the record shows that the Department improperly established a

deadline for submission of this information that directly conflicted with the Department's

statutory obligations to obtain information necessary to compute fair and accurate dumping

margins.  *See, e.g.*, *Helmerich & Payne*, 24 F. Supp. 2d 304, at 313 ("[F]air and accurate

determinations are fundamental to the proper administration of our dumping laws").  While the

Q&V response deadline may have been convenient for the Department, this convenience does

not justify disregarding statutory obligations.  *See China Kingdom*, 31 CIT 1329, at 1350

22

("Commerce may not avoid conducting the review in full compliance with the statute simply because in some instances it may be inconvenient to do so").

The plain language of the statute and substantial judicial precedent establish that the Department should have provided Jiasheng an opportunity to correct its improperly filed Q&V response or, at the very least, the Department should have accepted Jiasheng's subsequently filed Q&V response.  However, contrary to law, given the facts of this case, the Department's failure to comply with its statutory obligation and allow Jiasheng to correct its response is purely punitive. *See, e.g.*, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990); *see also National Knitwear & Sportswear Ass'n*, 15 C.I.T. 548, at 558.

### C.   The Department Should Not Have Denied Jiasheng Separate Rate Status in the Final Determination

Had the Department accepted Jiasheng's Q&V response, which, at the very least, the Department was obligated to allow Jiasheng to correct, the Department would not have arbitrarily rejected Jiasheng's timely filed separate rate application.  Rather, the Department should have maintained on the record the Jiasheng Q&V response that was filed on multiple occasions, as well as Jiasheng's timely filed separate rate application, which was unjustifiably rejected because the Department apparently "will not give consideration to any separate-rate status application made by parties that fail to timely respond to the quantity and value questionnaire" no matter how unnecessary.  *See* I&D Memo at Comment 45.  **Doc 1 at 105**.  Had the Department retained this information on the record, Jiasheng would not have been denied separate rate status in the Final Determination, which ultimately resulted in Jiasheng being assigned the punitive China-wide rate of 249.96 percent; instead, Jiasheng would have been assigned the current separate rate of 24.48 percent, which is in "stark contrast" to the China-wide rate.  *See*, *e.g.*, *Grobest,* 815 F. Supp. 2d 1342, at 1366-67.

23

Despite its statutory obligations, the Department did not provide any discernible or logical explanation for why it did not respond to Jiasheng's initial improper filing or why it would not accept Jiasheng's subsequent filings. *See* 19 U.S.C. § 1677m(c)(2) and (d); *see also China Kingdom*, 31 CIT 1329, at 1350; *see also Hebei Metals & Minerals Imp. & Exp. Corp*, 366 F. Supp. 2d 1264, at 1271.  Consequently, the Department's decision to deny Jiasheng separate rate status in its investigation clearly frustrates the remedial nature of the statute and the interests in an accurate and fair decision, especially when weighed against the absolute lack of any burden on the Department.  *See*, *e.g.*, *Grobest,* 815 F. Supp. 2d 1342, at 1366-67; *see also Helmerich & Payne v. United States*, 22 CIT 928, 938, 24 F. Supp. 2d 304, 313 (1998).  The Department should not have assigned to Jiasheng the punitive China-wide rate of 249.96 percent in this case.

## CONCLUSION

For the reasons discussed above, Jiasheng respectfully requests that this Court remand this proceeding to the Department with instructions to grant the relief requested herein.

   */s/ Francis J. Sailer*
Francis J. Sailer
Mark E. Pardo
Andrew T. Schutz
Brandon M. Petelin

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
1201 New York Ave., NW, Suite 650
Washington, DC 20005

*Counsel to Jiangsu Jiasheng Photovoltaic Technology, Co., Ltd.*

Dated: August 29, 2013