
Slip Op. 15 - 60

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JIANGSU JIASHENG PHOTOVOLTAIC TECHNOLOGY CO., LTD., <br><br>             Plaintiff, <br><br>     v. <br><br>UNITED STATES, <br><br>             Defendant. | Before: Donald C. Pogue, <br>       Senior Judge <br><br>Consol. Court No. 13-00012[1] |

OPINION and ORDER

[denying motion to intervene out of time]

Dated: June 16, 2015

     Gregory S. Menegaz, J. Kevin Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, DC, for the movant.

     L. Misha Preheim, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant. Also on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel was Rebecca Cantu, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

     **Pogue, Senior Judge:**  This consolidated action arises from the United States Department of Commerce's ("Commerce") antidumping ("AD") investigation of crystalline silicon photovoltaic cells ("CSPC" or "subject merchandise") from the

---

[1] This action is consolidated with SolarWorld Americas, Inc. v. United States, Ct. No. 13-00006. Order June 12, 2013, ECF No. 18.

People's Republic of China ("PRC" or "China").[2]  Before the court is a motion by Sumec Hardware & Tools Company, Limited ("Sumec") – an exporter of subject merchandise that participated in the investigation – to intervene in this action, notwithstanding the passage of more than two years since the litigation began.[3]

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[4] and 28 U.S.C. § 1581(c) (2012).

As explained below, because Sumec has not shown good

---

[2] See [CSPC], Whether or Not Assembled into Modules, from the [PRC], 77 Fed. Reg. 63,791 (Dep't Commerce Oct. 17, 2012) (final determination of sales at less than fair value, and affirmative final determination of critical circumstances, in part) ("Final Results") and accompanying Issues & Decision Mem., A-570-979, AD Investigation (Oct. 9, 2012).

[3] See Mot. for Intervention Pursuant to Rule 24(a)(3), ECF No. 101 ("Sumec's Mot.") (filed on May 14, 2015); Compl., Ct. No. 13-00006 (consolidated with this action, see supra note 1), ECF No. 8 (filed on February 1, 2013, challenging, inter alia, the AD cash deposit rate established for Sumec in this investigation; certifying service of the complaint on Sumec's counsel).  Pursuant to USCIT R. 24(a)(3), "[i]n an action described in 28 U.S.C. § 1581(c), a timely motion [to intervene] must be made no later than 30 days after the date of service of the complaint . . ., unless for good cause shown at such later time for the following reasons: (i) mistake, inadvertence, surprise or excusable neglect; or (ii) under circumstances in which by due diligence a motion to intervene under this subsection could not have been made within the 30-day period."

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

cause for filing its motion more than two years past the 30-day time limit for intervention, Sumec's motion to intervene out of time in this action is therefore denied.

## BACKGROUND

Because Commerce considers the PRC to be a non-market economy ("NME"),[5] when investigating merchandise from China, the agency presumes that the export operations of all Chinese producers and exporters are controlled by the PRC government, unless respondents show otherwise.[6] As a result, Commerce's practice is to assign to all exporters from the PRC a single "countrywide" antidumping duty rate unless they affirmatively establish eligibility for a "separate rate" by demonstrating both *de jure* (in law) and *de facto* (in fact) autonomy during the

---

[5] See [CSPC], Whether or Not Assembled into Modules, from the [PRC], 76 Fed. Reg. 70,960, 70,962 (Dep't Commerce Nov. 16, 2011) (initiation of antidumping duty investigation) ("The presumption of NME status for the PRC has not been revoked by [Commerce] and, therefore, in accordance with [19 U.S.C. 1677(18)(C)(i)], remains in effect for purposes of the initiation of this investigation.").

[6] See [CSPC], Whether or Not Assembled into Modules, from the [PRC], 77 Fed. Reg. 31,309, 31,315 (Dep't Commerce May 25, 2012) (preliminary determination of sales at less than fair value, postponement of final determination and affirmative preliminary determination of critical circumstances) ("Prelim. Results") ("In proceedings involving NME countries, [Commerce] has a rebuttable presumption that all companies within the country are subject to government control and thus should be assessed a single AD rate.") (citation omitted) (unchanged in the Final Results, 77 Fed. Reg. at 63,794).

period of investigation.[7]  Here, Commerce initially determined that Sumec had adequately established its eligibility for a separate rate.[8]  On February 1, 2013, however, SolarWorld Americas Inc. (formerly SolarWorld Industries America, Inc.[9]) ("SolarWorld") – a U.S. manufacturer of the domestic like product and a petitioner in the underlying investigation[10] – filed (and served on Sumec) a complaint challenging this determination (among other challenges to the final results of this investigation).[11]  Although a number of the producers/exporters whose separate rate status was challenged in SolarWorld's complaint timely moved to intervene in this action, Sumec was not among them.[12]

---

[7] Prelim. Results, 77 Fed. Reg. at 31,315 (unchanged in the Final Results, 77 Fed. Reg. at 63,794).

[8] See Final Results, 77 Fed. Reg. at 63,796.

[9] See Order Nov. 5, 2014, ECF No. 88 (granting SolarWorld's motion to amend the caption of this proceeding "to reflect the change in name of SolarWorld Industries America, Inc. to SolarWorld Americas Inc.").

[10] Compl., Ct. No. 13-00006 (consolidated with this action, see supra note 1), ECF No. 8, at ¶ 3.

[11] Id. at ¶¶ 12-14, Certificate of Service.

[12] See Order Feb. 22, 2013, Ct. No. 13-00006, ECF No. 15; Order Mar. 5, 2013, Ct. No. 13-00006, ECF No. 27; Order Mar. 13, 2013, Ct. No. 13-00006, ECF No. 33 (each order granting timely motions to intervene); cf. Siam Food Prods. Pub. Co. v. United States, 22 CIT 826, 829, 24 F. Supp. 2d 276, 280 (1998) ("Parties with identified interests in the results of a review have the option to protect those interests by intervening in the
(footnote continued)

After the close of briefing, on June 4, 2014, the court docketed a list of questions for the parties to address at the oral argument to be held on June 18, 2014.[13] Among the court's questions were a number of inquiries regarding SolarWorld's challenge to Commerce's grant of separate rate status to certain of respondents in this investigation, including Sumec.[14] Upon review of these questions, Commerce decided to "reconsider and reevaluate its determination to grant a separate rate to four respondents,"[15] including Sumec,[16] and accordingly moved for a voluntary remand "to reevaluate the evidence and reconsider the separate rate eligibility of[, *inter alia*, Sumec]."[17] This motion was unopposed.[18] Finding the motion to have been based on a substantial and legitimate concern, the court granted Commerce's request for a voluntary remand to

---

proceedings.") (citing USCIT R. 24).

[13] See Letter from Ct. Re Oral Arg., ECF No. 80.

[14] See id. at 9-15.

[15] Def.'s Mot. for Voluntary Remand, ECF No. 81 ("Def.'s Mot. for Remand") at 1.

[16] Id. at 2.

[17] Id. at 3.

[18] See ECF Nos. 81-89; see also Oral Arg. Tr., ECF No. 83, at 20 (SolarWorld's counsel "welcom[ing] the United States' motion for a voluntary remand").

reconsider the separate rate eligibility of, *inter alia*, Sumec.[19] At no point during this process did Sumec seek to intervene to protect its interests in retaining its separate rate.

On remand, Commerce determined that Sumec failed to affirmatively establish its *de facto* independence from government control, and hence concluded that Sumec was not eligible for a rate separate from the China-wide entity.[20] Finding itself aggrieved by this determination, Sumec then moved to intervene in this action, outside of the 30-day window afforded for intervention as a matter of right,[21] arguing that Commerce's determination on remand was a "surprise" within the meaning of USCIT Rule 24(a)(3)(i).[22]

---

[19] Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States, __ CIT __, 28 F. Supp. 3d 1317, 1340-41 (2014). See id. at 1340 n.113 (quoting SKF USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001) ("[E]ven if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position. . . . [I]f the agency's concern is substantial and legitimate, a remand is usually appropriate."), and noting that Commerce's stated concern was "consistency of agency action with other pending cases where a similar issue is presented" (quotation marks and citation omitted)).

[20] Final Results of Redetermination Pursuant to Ct. Order, ECF Nos. 97-1 (conf. version) & 98-1 (pub. version) ("Remand Results") at 8, 10-11, 23-25.

[21] Sumec's Mot., ECF No. 101.

[22] Id. at 4; see USCIT R. 24(a)(3)(i) (defining "good cause" for tardy intervention in actions challenging Commerce's antidumping determinations as including, *inter alia*, "surprise").

## DISCUSSION

USCIT Rule 24(a)(3), which governs intervention in actions challenging Commerce's antidumping determinations,[23] provides that interested parties may intervene as a matter of right within 30 days after the date of service of the complaint, and "expresses a clear mandatory standard that the court may waive the 30-day limit only if good cause is shown."[24]  "Good cause" is defined as either (1) "mistake, inadvertence, surprise or excusable neglect," or (2) "circumstances in which by due diligence a motion to intervene under this subsection could not have been made within the 30-day period."[25]

---

[23] USCIT R. 24(a)(3) (covering "action[s] described in 28 U.S.C. § 1581(c)"); 28 U.S.C. § 1581(c) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]."); 19 U.S.C. § 1516a (providing causes of action for judicial review of countervailing duty and antidumping duty proceedings); 19 U.S.C. § 1516a(a)(2)(B)(i) (providing cause of action for review of Commerce's determinations in antidumping investigations such as the one at issue here); 28 U.S.C. § 2631(j)(1)(B) ("Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that . . . in a civil action under [19 U.S.C. § 1516a], only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right[.]").

[24] Siam Food Prods., 22 CIT at 827, 24 F. Supp. 2d at 278 (citing USCIT R. 24(a)).

[25] USCIT R. 24(a)(3).  Sumec does not argue that it could not have, by due diligence, filed its motion to intervene within the 30-day period. See Sumec's Mot., ECF No. 101.

Here, Sumec argues that good cause exists for its tardy intervention because, notwithstanding Sumec's actual knowledge of SolarWorld's pending legal challenge to Sumec's separate rate status in the investigation, Sumec believed that the challenge was meritless, and hence saw no need to intervene until the "surprise" of Commerce's decision on remand.[26]  But adopting this interpretation of "surprise" as good cause for tardy intervention within the meaning of Rule 24(a)(3) would essentially render that provision's 30-day time limit meaningless.  For under this interpretation, all would-be Defendant-Intervenors could claim good faith (subjective) belief in the legality of Commerce's favorable determination, and thus unpredictably delay their intervention until the outcome of the litigation begins to appear unfavorable.  Such an interpretation "would render the actual time limit [for intervention] superfluous."[27]

---

[26] See Sumec's Mot., ECF No. 101, at 1-2 (explaining that Sumec "did not appeal or intervene" within the 30-day period because it "was not [yet] adversely affected" by Commerce's decision); id. at 3 ("Sumec Hardware was not aggrieved in the original final results [of the underlying AD investigation] and could not have reasonabl[y] predicted that the litigation would result in the denial of its separate rate."); id. at 4 ("[Sumec] had no reason to seek appeal [or intervene] [but] has now been significantly aggrieved by a decision it could not predict.  The decision was a 'surprise.'") (quoting USCIT R. 24(a)(3)(i)).

[27] See Siam Food Prods., 22 CIT at 830, 24 F. Supp. 2d at 281; see also id. ("Under such a scenario [where tardy strategic
(footnote continued)

That Sumec was subjectively surprised by the turn of events in the course of this litigation does not negate its awareness, at the time that SolarWorld served its complaint, that Sumec's interests in the outcome of this AD investigation may be adversely affected by this litigation. Thus this is not a case of surprise, but rather an example of a failed litigation strategy. Sumec knew its interests were at stake, and yet made a conscious decision to risk letting the litigation play out without Sumec's intervention. Sumec not only did not intervene within the 30-day time limit, but Sumec also did not seek to intervene at any point during the briefing of SolarWorld's challenge to Sumec's separate rate, nor even once it became apparent that Commerce itself was seeking an unopposed voluntary remand to reconsider the evidence on this issue. That this strategy turned out to be unwise is neither surprising nor excusable.[28] It does not constitute "good cause" within the

---

intervention is permitted so long as the movant files early enough to continue the action without too much prejudice to the opposing parties], existing parties and the court might not know when to expect intervention, the proceedings on the merits could be interrupted and/or delayed by motions to intervene, and extra adjudication could be routinely required for parties who choose to file late. The court assumes the 30-day limit added [to USCIT Rule 24(a)(3)] in 1993 was intended to avoid this result. The time limit cannot be so easily avoided, even if some prejudice to the late filer results from denial of the motion.").

[28] See USCIT Rule 24(a)(3)(i); cf. GPX Int'l Tire Corp. v. United
(footnote continued)

meaning of USCIT Rule 24(a)(3).

Nor is this a case of excusable neglect.[29] Here the reason for Sumec's tardiness was not neglect, but rather Sumec's conscious decision not to intervene until the outcome of the litigation began to appear unfavorable.[30] As in GPX, Sumec "had notice of the substantive issues raised by the appeal[] and could have moved to intervene."[31] Instead, "it delayed its decision on its involvement,"[32] awaiting the outcome of the remand determination. As in GPX and Siam Products, this does not constitute "excusable neglect," but rather "a conscious decision not to intervene timely."[33] As in Siam Products,[34] this

---

States, 33 CIT 114, 116-17 (2009) (not reported in the Federal Supplement) (declining to find good cause for tardy intervention where the movant was aware of the litigation affecting its interests but made a conscious decision to delay intervention and assume the risk that the litigation may adversely affect its interests).

[29] See Sumec's Mot., ECF No. 101, at 3 (suggesting that the court apply the Supreme Court's interpretation of "excusable neglect" to Sumec's tardy intervention (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP, 507 U.S. 380, 395 (1993) (discussing "excusable neglect" in the context of Federal Rule of Civil Procedure 60(b)(1) (permitting courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect"))).

[30] See supra note 27 (quoting and citing Sumec's motion).

[31] GPX, 33 CIT at 117.

[32] See id.

[33] Id. (quoting Siam Food Prods., 22 CIT at 830, 24 F. Supp. 2d at 280) (internal quotation marks omitted).

was not a case of neglect at all, but rather a deliberate decision that turned out to have been imprudent.

**CONCLUSION**

For all of the foregoing reasons, having shown no good cause for delaying its intervention until after completion of Commerce's voluntary remand, Sumec has not established a basis for exception from Rule 24(a)(3)'s general requirement that interventions must be made within 30 days of the service of the complaint.  Sumec's untimely motion to intervene – now that the matter has been fully briefed, argued, opined upon, and reconsidered on remand – therefore must be, and hereby is, denied.

It is SO ORDERED.

                                            ____/s/ Donald C. Pogue_____
                                            Donald C. Pogue, Senior Judge

Dated: June 16, 2015
       New York, NY

---

[34] See Siam Food Prods., 22 CIT at 830, 24 F. Supp. 2d at 280 ("There is simply no 'neglect.'  There was a conscious decision not to intervene . . . .").